## The Kansas City, Wyandotte & Northwestern Railroad Company v. Matthew Ryan.

1. New Trial, *Duty to Grant.* If the trial judge is dissatisfied with the verdict of the jury, upon weighing the evidence presented, it is his duty to set aside the verdict and grant a new trial.

2. —————— *Must be Granted.* Where the trial judge, in passing upon the motion for a new trial, states "that the verdict does not meet the approval of his judgment;" that it is "largely in excess of what would be full compensation to the owner of the land;" that he will "stand out of the way," and overrule the motion, *held*, that a new trial must be granted, and the questions at issue presented to another jury.

3. Misleading Instruction —*Expert Testimony.* The jury are to decide what weight, if any, shall be given to the opinion or evidence of an expert. Therefore it is misleading for a trial court to instruct the jury that the testimony of experts is supposed to be the best that can be furnished.

4. Verdict —*Excessive Damages —Average Theory.* Although a court may be justified in refusing to set aside a verdict rendered by the jury on the "average theory," yet the trial court ought not to suggest to the jury, if the witnesses differ as to values, that they ascertain what the average of the estimates is first, and then afterward decide whether such an average is fair or full value.

1—49 kas.

| | |
|---|---|
| 49 | 1 |
| 49 | 18 |
| 49 | 19 |
| 49 | 1 |
| 54 | 195 |
| 54 | 709 |
| 49 | 1 |
| 56 | 428 |
| 56 | 465 |
| 56 | 570 |
| 49 | 1 |
| 57 | 369 |
| 49 | 1 |
| 58 | 113 |
| 58 | 333 |
| 58 | 346 |
| 58 | 452 |
| 59 | 113 |
| 49 | 1 |
| 70 | 896 |
| 49 | 1 |
| 71 | 424 |
| 49 | 1 |
| 81 | 396 |

*Error from Leavenworth District Court.*

THE Leavenworth & Olathe Railroad Company, contemplating the building of a railroad from Leavenworth to Olathe, Kas., was incorporated September 27, 1886. The Kansas City, Wyandotte & Northwestern Railway Company, contemplating the building of a railroad from Kansas City to the Nebraska state line, was incorporated November 24, 1885. These two companies, the Olathe company and the railway company were, upon March 28, 1887, consolidated into the Kansas City, Wyandotte & Northwestern Railroad Company. Upon November 24, 1886, the district judge of Leavenworth county appointed three commissioners, upon the application of the Olathe company, to lay off a line of railway by condemnation. These commissioners, upon January 20, 1887, filed their report, making an assessment in favor of Matthew Ryan of $3,711, being an allowance for land taken at from $500 to $750 per acre, and $300 for damages to land not taken. Upon January 24, 1887, Ryan filed an appeal bond, and February 28, 1887, the appeal was docketed in the district court. In February, 1888, the case, in the name of Ryan against the Olathe company, and without any pleadings, was tried before the court and a jury, resulting in a verdict in favor of Ryan for $18,541.27, in which the jury found that the land taken was worth $7,475, or over $1,200 per acre, that the damages to land not taken were $9,750, and allowed as interest $1,316.27, nothing being allowed for injury to improvements. This verdict was by the court, on March 3, 1888, set aside as excessive. Upon January 19, 1889, nearly a year afterward, and nearly two years after the consolidation, Ryan asked leave to file a supplemental petition against the consolidated company as defendant. Notice of the presentation of that motion upon February 2, 1889, was served on the consolidated company, which, on that date, appeared specially and filed a motion to dismiss the appeal, because of the consolidation and subsequent delay and inaction of Ryan. These motions came on to be heard at the same term. The court

below overruled the motion to dismiss the appeal, but granted leave to Ryan to file a supplemental petition against the consolidated company as defendant and to prosecute the action against it.   On February 2, 1889, the supplemental petition was filed, stating the facts as to the condemnation and consolidation and the items of damages claimed.   The Kansas City, Wyandotte & Northwestern Railroad Company in due time filed an answer to this petition.   To such answer a reply was filed March 18, 1889.   Upon April 18, 1889, the case was reached for trial.   The Kansas City, Wyandotte & Northwestern Railroad Company then moved the court to require Ryan to elect whether he would proceed to a trial upon the transcript filed from the county clerk's office on February 28, 1887, or upon the supplemental petition, answer, and reply. This motion the court sustained, and Ryan elected to proceed to a trial on the transcript, and not upon the pleadings.   The trial then coming on, the railroad company objected to the introduction of any evidence, because there was no petition showing a cause of action against it.   The trial resulted in a verdict for $16,353.73, of which sum $2,225.23 was interest, and $14,128.50 the total damage, upon which interest was calculated.   Five and ninety-eight one-hundredths acres of land were taken, and its value was fixed at $1,200 an acre. The damage to land not taken was $6,952.50, or at the rate of $154.50 per acre.

The railroad company filed its motion for a new trial, upon all the statutory grounds.   This motion was overruled.   Before overruling the motion, Crozier, J., delivered and filed the following written opinion :

"I cannot say that the verdict of the jury in this case is not a fair average of the various estimates of damages stated by the witnesses; but it is an average, and seems to take no account of any differences in the ability of the several witnesses to judge of the matter.   That there were differences, and marked ones too, a cursory examination of the testimony will make clearly apparent.   I have been a resident of this city for the past 32 years, and have seen and observed its many ups and downs in that time.   I have bought and sold real

estate, and have been a constant observer of the prices at which it has changed ownership among others. I have seen this land hundreds of times. During the past 12 years I have presided in the judicial investigation of the value of and the injury to many pieces of land by the location and construction of railroads thereon, and have heard very many witnesses give their opinions in regard thereto; so that I think it cannot be fairly charged as unwarranted presumption in me to say that I have a reasonably intelligent idea of the matter entering into a controversy such as this one.

" The verdict in this case does not meet the approval of my judgment. It is, in my opinion, largely in excess of what would be full compensation to the owner of the land; but because, and only because, a jury in a former trial of this case gave a verdict but slightly larger than that now under consideration, and which I set aside as excessive, I let this one stand. There must be an end to the litigation some time, and inasmuch as 24 men have substantially agreed upon a rate of compensation, though greatly in excess of what my judgment can approve, it is possibly fair and proper that I should stand out of the way to a final determination of the controversy."

Thereupon the court overruled the motion for a new trial, and rendered judgment upon the verdict for $16,353.73. The *Railroad Company* excepted to the various rulings of the court, the verdict, and the judgment, and brings the case here for review and reversal.

*William C. Hook, M. Summerfield*, and *Pratt, Ferry & Hagerman*, for plaintiff in error, made many points, among them the following:

The trial judge erred in telling the jury that the testimony of experts was an approved way and the best that could be furnished. True, the jurors were permitted to apply their general knowledge and have the benefit of the view taken, but in doing so they were impressed with the thought that the evidence of the experts was the best. They were not told that they were bound to accept the evidence of experts; they were to a limited extent left to exercise their own judgment about that, but in exercising it the influence of the judge's

opinion that such evidence was the best was left upon their minds. They were, however, told that they were either to accept the opinion of one set of witnesses, or strike an average. *Hair v. Little,* 28 Ala. 236; *Forrester v. Moore,* 77 Mo. 651, 659, 660; *Heithecker v. Fitzhugh,* 41 Kas. 50, 52; *Ball v. Hardesty,* 38 id. 540, 543; *A. T. & S. F. Rld. Co. v. Thul,* 32 id. 257, 262; *Anthony v. Stinson,* 4 id. 211; *C. K. & W. Rld. Co. v. Drake,* 46 id. 568; *Head v. Hargrave,* 105 U. S. 45; *Pingrey v. C. & D. Rld. Co.,* 78 Iowa, 438, 442.

There was error in suggesting to the jury to make an average. They had the right for themselves to reject every opinion in the case, refuse to make an average, and from the facts in evidence decide for themselves what was the difference in value of the land. See cases cited *supra,* and especially *Pingrey v. C. & D. Rld. Co.,* 78 Iowa, 438, 442; *C. K. & W. Rld. Co. v. Drake,* 46 Kas. 568. See also, *Head v. Dyson,* 31 Kas. 74–76; *Railroad Co. v. Retford,* 18 id. 245–249; *Bailey v. Beck,* 21 id. 462; *Johnson v. Husband,* 22 id. 277; *Werner v. Edmiston,* 24 id. 147; *City of Kinsley v. Morse,* 40 id. 588; *Burke v. Magee* (Neb.), 42 N. W. Rep. 890; *Thomas v. Dickinson,* 12 N. Y. 364, 372, 373; *Allard v. Smith,* 2 Metc. (Ky.) 297, 300, 301; 3 Sedg. Dam. (8th ed.), § 1327; *Richardson v. Coleman* (Ind.), 29 N. E. Rep. 909; *Goodsell v. Seeley,* 46 Mich. 623; *Randolph v. Lampkin* (Ky.), 14 S. W. Rep. 538. So we submit merely because a verdict arrived at by the average system would not be set aside for the reason there was no agreement in advance, is no reason why a court should charge the jury to adopt a practice which this court has twice said should not be commended. *Bailey v. Beck,* 21 Kas. 462, 465; *City of Kinsley v. Morse,* 40 id. 588, 591, 592.

In deciding the motion for a new trial, the trial judge filed a written opinion, (incorporated into the record,) wherein he states that "the verdict in this case does not meet the approval of my judgment;" and that it is, in his opinion, "largely in excess of what would be full compensation to the owner of the land," etc. The judge misconceived his duty upon the motion for a new trial. *Atyeo v. Kelsey,* 13 Kas. 212, 216, 217; *Will-*

*iams v. Townsend,* 15 id. 563, 570, 571; *Railway Co. v. Kunkel,* 17 id. 145, 172; *The State v. Bridges,* 29 id. 138, 141, 142, 143; *Railroad Co. v. Keeler,* 31 id. 439; *Railroad Co. v. Keeler,* 32 id. 163, 166, 167; *Railroad Co. v. Diehl,* 33 id. 422, 425, 426; *Bass v. Swingley,* 42 id. 729; *Insurance Co. v. Neff,* 43 id. 457; *The State v. Summers,* 44 id. 637; *England v. Burt,* 4 Humph. 401; *Vaulx v. Herman,* 8 Lea, 683; *Railroad Co. v. Foster,* 10 id. 351; *Mehan v. Railroad Co.,* 55 Iowa, 305; 2 Tidd's Pr. (4th Am. ed.) 914. It is the duty of the trial court to exercise its judgment regardless of the number of times it may be called upon in the same case so to do. Even this court will set aside a second verdict which is excessive. *K. P. Rly. Co. v. Peavey,* 34 Kas. 472, 487. The court had no right to take into consideration the fact of the former verdict, because it was against the Olathe company after the act of consolidation. As decided in *K. O. & T. Rly. Co. v. Smith,* 40 Kas. 192, that verdict and every act of the court concerning that company after the consolidation was an absolute nullity. The court below, in ignoring the doctrine of that decision, misconceived its duty.

*Lucien Baker,* for defendant in error:

The sixth assignment of error by the plaintiff in error is an attempted criticism upon a portion of the judge's charge with reference to the testimony of experts. We all know that, in cases of this kind, it is the usual, customary and approved way, in the first instance, of attempting to show the value of land taken for railroad purposes, by calling in witnesses who are supposed to have some particular knowledge with reference to the value of the land. Matthew Ryan produced on his part six witnesses who claimed to know the value of the land appropriated, and the damage to the remainder of his land not appropriated. The railroad company produced six witnesses who also claimed to be experts. In addition to all of this expert testimony, the court permitted the jury to visit the premises, and to apply their own common knowledge, if they had any, with reference to such matters, and from the whole of it,

and from the testimony of the witnesses, and from their own personal examination, to determine the amount that should be awarded to Ryan. The court nowhere told the jury that they were bound to take the testimony of these experts in preference to their own judgment and opinion after viewing the premises. It simply said that the testimony of these experts should be considered, and that from such testimony and from their own observations, and applying their own common knowledge as to such matters, and from it all they should determine the amount to be awarded Ryan.

We submit that the criticism upon the judge's charge is not well taken, and that from a fair reading of it the jury were not misled, and could not have been misled or influenced in any respect with reference to such testimony. Nor did the court, by saying that that was the approved method of attempting to determine the amount of damage in such cases, invade the province of the jury. The court told the jury that they had a right to avail themselves of any knowledge in regard to the situation of the property from the investigation which they had made, and from such investigation, and from all of the evidence, to determine the amount.

The seventh assignment of error in the brief of the plaintiff in error is taken upon the charge of the court to the jury. It seems to us that it was eminently a proper charge, and that it is not subject to the criticisms sought to be placed upon it. The basis of the claim made by the plaintiff in error is, that the court suggested to the jury to make an average verdict. In the brief of the railroad company, counsel use this language: "So we submit merely because a verdict arrived at by the average system would not be set aside for the reason there was no agreement in advance, is no reason why a court should charge the jury to adopt a practice which this court has twice said should not be commended." The claim made against such charge, that the court ought not to have said anything about an average verdict, comes with very bad grace and little force from the railroad company, when it by instructions asked, Nos. 12 and 13 in this case, demanded

that the court should charge the jury just as the court did charge the jury upon that matter in its general charge; that is, that they should not agree to average the evidence and then divide that amount by the number of jurymen and make the result their verdict. It is probable that that portion of the judge's charge would never have been given to the jury except the attention of the court was specially called to it by the request as enunciated in requests aforesaid by the railroad company, numbered 12 and 13. The court in its general charge, having its attention called to that matter by the company, gave the charge as it is, and then simply refused to give these instructions, 12 and 13, because of mere repetition. The court admonished the jury that they could not lawfully arrive at what is known or called an average verdict. The verdict in this case was in no sense an average verdict. See *P. P. Rld. Co. v. Montgomery*, 46 Kas. 126.

Nor is the opinion of the court subject to the criticism that the court invited the jury to arrive at an average verdict. On the other hand, it especially cautioned the jury that they had no right to do anything of the kind. From an examination of the verdict, and of the particular questions of fact answered, it will be seen at a glance that it was not the result of an addition and division of the various estimates placed upon the value of the land and damage to the remainder. That it was not, is susceptible of mathematical demonstration. Nor was the amount awarded in accordance with the estimate of the highest witnesses on the part of the plaintiff, but on the other hand it was materially and substantially below the estimate of the lowest witness on behalf of the plaintiff, and the value of the six acres of land so found by the jury was but a trifling sum above the actual value of the land as placed by the highest witness for the defendant, Mayor S. F. Neely. The jury allowed as damages to the portion of the land not taken $6,952, which sum was only about one-half the amount of damage that the witnesses for the plaintiff fixed and estimated the same to be. From an examination of the testimony as given by the witnesses for the railroad company, it is plain

as the noonday sun that, if they could have excluded from their minds the idea of benefits, and had not offset benefits, they would have determined that the damage to the remaining portion of the land was evidently much more than the amount awarded by the jury.

The average of the six witnesses for the plaintiff, to wit, Matthew Ryan, jr., J. P. Bauserman, S. Simmonds, S. H. Holmes, George E. McGill, and David Atchison, as to the market value of the land actually taken, is $9,000, or $1,500 per acre. The verdict of the jury for the six acres thus taken was $7,176 or nearly $2,000 less than the average amount of plaintiff's witnesses, and but little over $1,000 more than the estimated market value put upon the land actually taken as placed by Mayor Neely, the leading witness for the railroad company. So that it appears from these valuations that the verdict of the jury as to the amount and value of the six acres of land must have been about right, and could not have been determined by average, nor brought about by passion or prejudice.

By reading the cross-examination of the witnesses for the railroad company, it will be observed that they allow no damage to the remaining portion of the 53 acres of land not taken, because, as to the damage to the 53 acres of land not taken, they offset it, whatever it was, by what they call benefits or advantages to it because of the appropriation of the right-of-way. By a casual inspection of the map, and by a little application of common sense, it will be seen that you cannot take a strip of land, 2,600 feet long and 100 feet in width, almost parallel with Fourth street, and say that by thus taking such a strip of land there is no damage to the remaining portion of the land. Such a statement is shocking to common sense, and the witnesses for the railroad company could only escape and avoid it by saying that there was damage, but that they offset it by benefits to be derived from the railroad.

It will also be observed that the damage per acre to the remaining 53 acres not taken, estimated by the plaintiff's witnesses, was a little over $250 per acre, and that the jury

allowed but a little over one-half that sum per acre, making a total damage for depreciation of the 53 acres of $6,952. This result of $6,952 cannot be figured out to be obtained by averaging anything, because the defendant's witnesses offset it at much more and allowed nothing for it; consequently there was no averaging there. So it will be observed that the total verdict for the value of the land actually taken and the damage to the remaining portion not taken is the sum of $14,-128.50; the remaining portion of the verdict, being for interest, consequently cutting no figure in this computation. Thus it appears by mathematical demonstration that the verdict or amount that was finally allowed was not the result of any average whatever, and was an amount that was much less than that estimated by the witnesses for the plaintiff, and but a trifling amount more than the amount estimated by the defendant's witnesses. So that, in this case, there is no room for any statement that this verdict was obtained by passion or prejudice, or that it is excessive. Nor is it a verdict arrived at by a general average of the opinions of the various witnesses, as intimated as being the proper thing in 46 Kas. 126, in this class of cases.

The jury must have based their decision largely upon their examination of the premises, and, instead of being controlled by the witnesses upon either side, have exercised their own common sense and judgment with reference to the value of the land taken, and the damage to the remaining portion of the land not taken, upon an actual view of the premises.

The eighth assignment of error by the plaintiff in error is, that the trial judge misconceived his duty upon the motion for a new trial. We think that the only irregularity in this matter was the action of the trial judge in reducing some of his ideas to writing and filing them, and ordering them to be made a part of the record in this case. The judgment of the court in overruling the motion for a new trial was correct, as shown by an examination of the testimony, and of the various estimates as to value and damage made by the respective witnesses on either side.

*William C. Hook, M. Summerfield,* and *Pratt, Ferry & Hager-
man,* for plaintiff in error, in reply:

Error in telling the jury that the testimony of experts was
an approved way and the best that could be furnished.    We
do not think that counsel fairly meets our contention in this
regard.    The point made is, that while the judge submitted
the case in general terms, he singled out the proposition that
an expert's opinion was the best evidence.    This is not the
law.    It was an interference with the province of the jury.
It sent the jury out impressed with the judge's view that the
best evidence in the case was that contained in the opinions
of the experts.

There was error in suggesting to the jury to make an aver-
age.    It is said that the verdict was not in fact an average.
A labored effort is made by counsel to show that an average
of plaintiff's evidence made more than the amount awarded.
Had counsel taken all the opinions in the case, added them,
and divided them by the number of witnesses, he would have
proved substantially the average directed by the judge.    When
we remember that the amounts testified to rested in the mem-
ory of the jury, and about which there might be a mistake,
it is surprising that the result was so near an exact average.
The learned judge with his memory designated the result as
an average and nothing more.

It is said by counsel that it is probable that this portion of
the judge's charge would never have been given except that
the attention of the court was directed to it by defendant's
refused instructions 12 and 13.

As counsel's argument is for the three cases, and alike ap-
plicable to all, we are willing to stand by the record of all of
them.    The Fisher case was tried first, on April 16 and 17.
This case was tried upon April 18 and 19.    In the Fisher
case, without either party asking an instruction on the sub-
ject, the court charged the jury as to averaging.    When we
came to try the Ryan case, it was not presumptuous for us to
assume that the judge would then do as he had done in the

Fisher case: instruct the jury as to averaging. To guard our rights, and out of an abundance of caution, we presented instructions 12 and 13, expressing exactly the opposite view from that taken by the judge. These he refused, and an exception was preserved. The judge then of his own motion gave a charge as to averaging. To this we excepted. In the light of these records, it is plain that the judge first suggested the average system, and then, in the face of persistent resistance upon our part, consistently stood by his view of the law. He was wrong, and we are here for redress.

The opinion of the court was delivered by

HORTON, C. J.: In passing upon the motion for a new trial, the trial judge stated, *inter alia*, "that the verdict did not meet the approval of his judgment;" that it was "largely in excess of what would be full compensation to the owner of the land;" that he would "stand out of the way," and then overruled the motion. It has been the unvarying decision of this court to permit no verdict to stand unless both the jury and the court trying the cause could, within the rules prescribed, approve the same. When the judgment of the trial judge tells him the verdict is wrong, whether from mistake, or prejudice, or other cause, no duty is more imperative than that of setting it aside and remanding the questions at issue to another jury. While the case is before the jury for their consideration, the jury are the exclusive judges of all questions of fact; but when the matter comes before the court upon a motion for a new trial, it then becomes the duty of the trial judge to determine whether the verdict is erroneous. He must be controlled by his own judgment, and not by that of the jury. When a trial judge overrules a motion *pro forma*, and declines to look into the facts or pass upon its sufficiency, he misconceives his duty and commits fatal error. He has no right "to stand out of the way" and against his judgment overrule such a motion. He must approve or disapprove the verdict. If he approves, he may overrule the motion for a

*1. New trial, duty to grant.*

*2. Must be granted.*

new trial; if he disapproves, he should set it aside and permit another jury to pass upon the facts.   The following cases fully sustain the foregoing conclusions, and therefore the judgment of the district court must be reversed: *Atyeo v. Kelsey*, 13 Kas. 212; *Williams v. Townsend*, 15 id. 563; *Railway Co. v. Kunkel*, 17 id. 145; *The State v. Bridges*, 29 id. 138; *Railroad Co. v. Keeler*, 32 id. 163; *A. T. & S. F. Rld. Co. v. Dwelle*, 44 id. 394.

We are asked, on the part of Ryan, to expunge from the record the opinion or statements of the trial judge made by him in passing upon the motion for a new trial.   We are referred to the case of *King Co. v. Hull*, 25 Pac. Rep. 927. There is no such case as *King Co. v. Hull* reported in 25 Pac. Rep. 927.   The case of *Salazar v. Longwill* (S. C. of New Mexico) appears on that page.   *King Co. v. Hill et al.* (S. C. of Washington) is reported in 25 Pac. Rep. 451, but the quotation cited in the brief is not found in the opinion.   If, however, any case in the 25 Pac. Rep., or in any other report, contains the language quoted in the brief, about striking out the opinion of the trial judge from a transcript, it would seem to us that such a motion was well taken and properly decided, but upon the sole ground that the opinion was not a part of the transcript.   In the case at bar, the opinion of the trial judge is preserved in the case-made; therefore it is properly here for our consideration.   This court has the right to ascertain from a record, made up and certified to in due form, whether the verdict of the jury has the approval of the trial judge.   He has the same opportunity to see and hear the witnesses as the jury; and if, in his judgment, the jury have erred, it is proper, in disposing of a motion for a new trial, for the trial judge to so state.   If he disapproves the verdict in as strong language as quoted, this court, having that knowledge from the record, will not hesitate to reverse the judgment and grant a new trial.

As the case must go back for another hearing, other matters discussed in the briefs may be beneficially noticed.   The appeal was perfected January 24, 1887.   Within a few days

thereafter the papers were transmitted to, and the case was docketed in, the district court. At that time, the "Olathe company" was in existence as a corporation. On March 28, 1887, the "Olathe company" and the "railway company" were consolidated into the "Kansas City, Wyandotte & Northwestern Railroad Company." Article 1 of the written agreement for the consolidation of these companies expressly provided that—

"The constituent corporations hereby agree to consolidate and form one company, to be called 'The Kansas City, Wyandotte & Northwestern Railroad Company,' which shall own, complete, maintain, operate and control said continuous and consolidated lines of railroads, with all the rights, powers, privileges and immunities of either of the constituent corporations, and subject to all the obligations and liabilities of every nature to which either of the constituent corporations is subject."

Upon the consolidation, the Kansas City, Wyandotte & Northwestern Railroad Company not only assumed all the obligations of the Olathe company and the railway company, but thereby became liable to pay to Ryan and other landowners the value of all land taken for the right-of-way of the Olathe company, and all damages thereto. On January 19, 1889, in accordance with the better practice, Ryan filed a petition alleging all the facts necessary for a recovery against the Kansas City, Wyandotte & Northwestern Railroad Company, and expressly alleging that this company "assumed all the obligations and liabilities of every nature and kind of the companies so consolidated." We think that there was no necessity for the district court to compel an election. Ryan had proceeded regularly; he had taken his appeal as the statute prescribed; he had filed his transcript, and had his case docketed. When the Olathe company ceased to exist, on account of its consolidation with another company, the issues were properly framed by pleadings against the new company. Instead of trying the case upon the transcript only, it should have gone to the court and jury upon the pleadings and the evidence presented thereunder. Whatever construction may be given

to § 40, in connection with §§ 433 and 434 of the civil code relating to substitution and revivor, it is clearly apparent from the allegations of the petition and the articles of consolidation that the Kansas City, Wyandotte & Northwestern Railroad Company is responsible to the plaintiff below for the value of the land and all damages for which the Olathe company was, at the time of its corporate death, liable, and upon the same terms and conditions. The new railroad company expressly assumed, in writing, all of the obligations and liabilities of every nature of the Olathe company, and may be held therefor. The petition was filed in ample time to recover, upon the written articles of consolidation and the facts therein alleged.

The court in its instructions to the jury, in referring to the expert testimony as to the value of the property taken for the right-of-way before and after the construction of the railroad, not only called the attention of the jury to such testimony as "the best that could be furnished," but also suggested to the jury that—

"The best the jury can do, I suppose—and that is for them to determine—would be to take into consideration all this testimony on both sides, and then apply their common knowledge, and the results of their observation down there, and from it all determine whether, after finding what the average is, whether that is a fair valuation and ought to be adopted, or whether they will discard certain witnesses' testimony, and adopt that of others that they have more confidence in. That is a matter for you to determine. You must take care, however, that you are not to agree beforehand among yourselves that you will take the testimony of these witnesses and average them and adopt the result as your verdict; that you must not do beforehand. *But if you ascertain what the average is first, and then conclude that that is a fair compensation afterward,* there is nothing in the law to prevent you from adopting that as your verdict, but you must not beforehand agree to be bound by that result. But if you arrive at such a result, and are satisfied with it, each one for himself, and then you adopt it, you may do so."

In *Ball v. Hardesty,* 38 Kas. 540, it was said:

"The testimony of expert witnesses, this court has repeatedly held, must be considered like all other testimony; it must

be tried by the same tests, and receive just such weight as the witness is entitled to, in connection with all the circumstances of the case."

In *Railroad Co. v. Drake*, 46 Kas. 568, it was decided that —

"In an action to determine the value of certain town lots condemned for the right-of-way of a railroad, the opinions of witnesses as to the value of the lots at the time they were condemned will not be deemed conclusive, but the jury may consider such opinions in connection with all the other testimony in the case, and then, for itself, determine from all the testimony the value of such lots." *Anthony v. Stinson*, 4 Kas. 211; *Railroad Co. v. Thul*, 32 id. 257; *Heithecker v. Fitzhugh*, 41 id. 50; *Head v. Hargrave*, 105 U. S. 45; *Pingrey v. Railroad Co.*, 78 Iowa, 438.

As the jury are ordinarily inclined to give great weight to whatever a trial judge may say to them, the testimony of the experts should have been submitted to the jury, not as the best evidence, but for them to take it and decide what weight, if any, should be given to the same.

3. Misleading instruction — expert testimony.

Again, it is possible the jury might have been misled by the instruction concerning the "average theory." It is hardly proper to suggest to the jury to ascertain what the average is first, and then to decide whether that is a fair compensation. Any suggestion to reach a verdict by adopting the "average theory" might result in a verdict from an agreement upon such a basis, rather than from deliberate judgment upon the evidence of those witnesses in whom the jury had the most confidence. Each member of the jury should arrive at his verdict after a careful consideration of all the evidence in the case, and the suggestion of averaging the evidence, coming from a court, might cause the jury to agree to "an average" without a further consideration of all the evidence in the case. Although a court might be justified in refusing to set aside a verdict made upon the "average theory," it does not follow that a court would be authorized to suggest such mode by an instruction.

4. Verdict — excessive damages — average theory.

*Thomas v. Dickinson,* 12 N. Y. 364; *Allard v. Smith,* 2 Metc. (Ky.) 297; *Bailey v. Beck,* 21 Kas. 462; *Johnson v. Husband,* 22 id. 277; *Werner v. Edmiston,* 24 id. 147; *City of Kinsley v. Morse,* 40 id. 588. The language about the evidence of the experts "being the best," and the reference to ascertaining first "the average," might have been omitted with advantage from the instructions.

There are other matters referred to in the briefs, but in view of a new trial we do not think that further comment is necessary.

The judgment of the district court will be reversed, and the cause remanded.

All the Justices concurring.