THE KANSAS CITY SOUTHERN RAILWAY COMPANY V.
E. A. FIELDS *et al., as Partners, etc.*
No. 14,410.    (85 Pac. 412.)
SYLLABUS BY THE COURT.

PRACTICE, SUPREME COURT—*Order Granting a New Trial.* This
court will not reverse an order of the trial court granting a
new trial unless the record shows the order was clearly and
manifestly in violation of some principle of law.

Error from Crawford district court; WALTER L. SI-
MONS, judge.    Opinion filed April 7, 1906.    Affirmed.

*S. W. Moore, Cyrus Crane,* and *W. J. Watson,* for
plaintiff in error.

*John M. Wayde,* and *Paul F. Coste,* for defendants in
error.

The opinion of the court was delivered by

GREENE, J.: The Fields & Slaughter Company ob-
tained a judgment against Forrester Brothers, to sat-
isfy which they garnisheed the Kansas City Southern
Railway Company. It answered that it was not in-
debted. Upon this answer the Fields & Slaughter
Company took issue. The jury returned a verdict for
the garnishee. Upon application of the plaintiffs the
verdict was set aside and a new trial ordered. The
garnishee prosecutes error to reverse this order.

There were no pleadings; consequently the conten-
tions of the parties can only be ascertained from the
statements made by counsel and the questions which
appear to have been tried. From these it appears that
the Fields & Slaughter Company claimed that For-
rester Brothers were engaged in buying and shipping
corn and oats; that about September 27, 1901, the lat-
ter entered into a contract with certain railroads run-
ning from Omaha and Council Bluffs and other com-
mon northern points to Kansas City, called the north-
ern connecting lines, and the Kansas City Southern

Railway Company, for the transportation of corn and oats from Council Bluffs and other common points on these roads to Kansas City and over the Kansas City Southern to Shreveport, Ala., and other common points in the south, at a rate of sixteen and one-half cents per hundredweight; that the Kansas City Southern agreed to accept as its proportion of this rate eight cents per hundred, and to ship the corn over its line from Kansas City at the rate of eight cents per hundred; that Forrester Brothers commenced to ship the corn about the 1st of October, 1901, and continued shipping until February, 1902; that the Kansas City Southern charged eight cents per hundred until October 31, after which time it raised the rate to ten cents, and subsequently to fourteen cents; that Forrester Brothers paid this excess, amounting to about $10,000, and therefore that the Kansas City Southern was indebted to Forrester Brothers for this excess. It was this alleged indebtedness of the Kansas City Southern to Forrester Brothers that the Fields & Slaughter Company were attempting to apply upon their judgment against Forrester Brothers.

The Kansas City Southern denied that it had ever made a contract with Forrester Brothers, or any one representing them, for the shipment of corn and oats from Kansas City to Shreveport or other common points at eight cents; but claimed that during the months of September and October, 1901, it had declared and published a rate of ten cents per hundred pounds on corn and oats from Kansas City to Shreveport, Texarkana, and other common southern points; that this rate had been filed with the interstate commerce commission at Washington, as required by the interstate commerce act, and was in force until October 31, about which time it changed its schedule and advanced the rate to fourteen cents, which rate was also published, and filed with the interstate commerce commission; that if any contract existed by which Forrester Brothers were to receive a special rate lower

than that so declared and published, such contract would be in violation of the interstate commerce act, and void. It was also contended by the garnishee that its only agreement concerning the shipment of corn and oats coming to it over the northern connecting lines was made with one Shauffler, traffic agent for such lines, by which it agreed to divide the sum of the two local rates with the northern connecting lines on a more advantageous basis for the northern lines than its proportion of the two local rates; that no time was fixed for the expiration of this agreement for the division of the two local rates from the northern points to the southern points; that before any grain was received by the Kansas City Southern the northern lines forwarded a statement or schedule of such division of rates to the Kansas City Southern, according to which the agreement was to terminate on October 31, 1901; and that none of the alleged overcharges were made by the Kansas City Southern prior to that date.

It was also contended by the garnishee that the contract relied upon by the plaintiffs as a basis for its liability to Forrester Brothers was so indefinite and uncertain, both as to the quantity of grain to be shipped and the time within which it should be actually shipped, that it was non-enforceable; and also that the alleged contract, if made as claimed by plaintiffs, would be void for want of mutuality, in that Forrester Brothers did not agree to ship any grain over its line, and were not bound so to do. Another contention by the garnishee was that Forrester Brothers paid the rates charged without protest, complaint, or objection, and therefore that the payment was voluntary. All of these facts were passed upon by the jury, and they found for the garnishee. Upon a motion for a new trial the court was required to review all of the evidence produced on the trial tending to establish or refute these disputed facts.

We are not informed upon what grounds the court

set aside the verdict and granted a new trial. The granting of a new trial is, however, not looked upon unfavorably by the law, and is a matter so largely within the discretion of the trial court that this court has seldom found it necessary to reverse such orders. The trial court, on a motion for a new trial, is not required to determine that the party applying therefor has not had a fair trial, but if it entertains a reasonable doubt upon the question a new trial may be granted. It is the purpose of the law that every litigant shall have his right fairly and honestly adjudicated in accordance with its rules and forms, and, that no advantage may be taken, the matter of granting new trials is very largely a matter of judicial discretion. Upon an application for a new trial, where many material issues of fact have been involved and determined by the jury, the trial judge must review and weigh all the evidence passed upon by the jury, and also take into consideration everything transpiring on the trial. It may happen that incidents may take place at the trial which could not be put into a record and which would fully justify the court in granting a new trial. Such incidents cannot be made to appear to this court. For these reasons this court has not the opportunity of knowing what induced the trial court to grant the new trial, in the absence of a statement in the record.

It was said in the syllabus of the case of *City of Sedan v. Church,* 29 Kan. 190:

"The supreme court will not reverse the order of the trial court granting a new trial unless the supreme court can see beyond all reasonable doubt that the trial court has manifestly and materially erred with respect to some pure, simple and unmixed question of law, and that except for such error the ruling of the trial court would not have been made as it was made, and that it ought not to have been so made."

The judgment is affirmed.

All the Justices concurring.