H. ROWELL, *Appellant,* v. THE CEDARVALE OIL, GAS AND MINING COMPANY *et al., Appellees.*

No. 16,226.

SYLLABUS BY THE COURT.

PRACTICE, SUPREME COURT—*Motion for New Trial on Several Grounds Sustained Generally—Prerequisite to a Reversal.* Where a motion for a new trial, in which ten separate and distinct grounds are stated, has been sustained by the district court generally, and the record does not indicate any specific ground upon which the ruling of the court was placed, such decision will not be reversed by the supreme court unless it is made clearly to appear that it can not be justified under either of the several grounds of the motion.

Rowell v. Gas Co.

Appeal from Chautauqua district court; GRANVILLE
P. AIKMAN, judge.   Opinion filed December 11, 1909.
Affirmed.

J. E. Brooks, and C. W. Spencer, for the appellant.

W. H. Sproul, for the appellees.

The opinion of the court was delivered by

GRAVES, J.:  This action was commenced in the dis-
trict court of Chautauqua county by H. Rowell against
the Cedarvale Gas, Oil and Mining Company and J. M.
Dosbaugh to recover the value of an outfit of tools used
in drilling oil and gas wells.   The plaintiff claimed to be
the owner of the tools, and alleged a conversion thereof
by the defendants.   The value of the property was
averred to be $2617.05.   The defendants answered with
a general denial.

Upon the trial the jury returned a verdict in favor of
the plaintiff for the sum of $1667.   The defendants
moved for a new trial, and the motion was sustained.
The motion contained ten separate and specific grounds.
It was sustained generally, the court giving no specific
reason for its ruling.   To this decision the plaintiff ex-
cepted, and he brings the case here for review.

It is conceded by the plaintiff that the decision of the
district court can not be disturbed by this court unless
the ruling is made clearly to appear to be unjustifiable
under any of the several grounds of the motion.   To
make this showing the plaintiff assumes that of the ten
grounds of the motion the court must have considered
but two, each of which relates to the amount of recov-
ery.   We do not think that this assumption is war-
ranted by the record.

It appears that the gas company had been the owner
of the tools, and sold them to the plaintiff for $1800.
In the contract of sale the company retained title until
the purchase price should be fully paid.   It was stipu-
lated that the plaintiff should drill certain wells for the

company at a stated price per foot, and a part of the amount due him for such work was to be credited upon the purchase price of the tools, as earned. A part of the casing was to be furnished by the company. The plaintiff completed one well; when the second well was about 850 feet deep a part of the casing collapsed and stopped the work. The plaintiff became discouraged and abandoned the job. The tools were not paid for and were left by the plaintiff. During his absence the defendants took the tools into their possession and sold them at public sale, applying the proceeds upon the unpaid purchase price. The secretary of the gas company, J. M. Dosbaugh, bought the tools in his own name, for the company.

It was contended upon the trial by the plaintiff that the failure of the second well was due to the negligence of the gas company in furnishing an inferior quality of casing, which caused the collapse, and therefore he ought to be credited on the purchase price of the tools the full amount which he would have realized if the well had been completed according to the contract. He claimed that if such credit were given the purchase price for the tools would be fully paid. It was claimed by the gas company that the plaintiff was indebted to it in addition to the purchase price of the tools, for the extra use thereof, as stipulated in the contract, which amount should be credited to it in determining whether the tools had been paid for by the plaintiff or not. From this it will be seen that before the plaintiff could establish ownership to the property in controversy it was necessary to determine several important questions. Among these, the following may be mentioned: How much should be credited on the purchase price of the tools on account of the failure of the second well? Was such failure due entirely to defective casing? Who selected the casing used? During what length of time did the plaintiff use the tools for his own purposes? It is unnecessary to state further the details of the con-

troversy. Enough has been shown to indicate several propositions upon which there would naturally be conflicting testimony, and an examination of the record shows the usual disagreement of witnesses in a sharply contested controversy.

We are unable to find from the record that the court clearly acted arbitrarily and without just cause in granting a new trial in this case or that there was an abuse of discretion, or indeed any cause for criticism. As a general rule, trial courts are reluctant to grant new trials and more often err in refusing than in granting them. It is seldom that trial courts have been reversed here on account of error in sustaining a motion for a new trial. The cases cited by counsel are not, we think, controlling. In the case of *Lindh v. Crowley,* 29 Kan. 756, the record stated specifically the one ground upon which the motion was allowed and the reasons of the court for its decision. In the case of *A. T. & S. F. Rld. Co. v. Brown,* 51 Kan. 6, the railroad filed a motion for a new trial and subsequently, and before the court had acted upon it, asked leave to withdraw the motion and expressly waived all error which might have accrued upon the trial, and yet the court granted a new trial. This was held to be erroneous. In the case of *Railroad Co. v. Werner,* 70 Kan. 190, a new trial was granted for a ruling of the court upon the trial to which there was no objection or exception; this was held error. In the case of *Sovereign Camp v. Thiebaud,* 65 Kan. 332, the record disclosed that a new trial was granted upon one distinct ground, which from the record appeared to be clearly erroneous. These cases are not parallel or even analogous to the one at bar, where it can not be ascertained upon which of several grounds the court acted. The rule applicable here was fully stated in the case of the *City of Sedan v. Church,* 29 Kan. 190, and reads:

"Trial courts are invested with a very large and extended discretion in the granting of new trials; and new trials ought to be granted whenever, in the opinion

of the trial court, the party asking for the new trial has not in all probability had a reasonably fair trial, and has not in all probability obtained or received substantial justice, although it might be difficult for the trial court or the parties to state the grounds for such new trial upon paper so plainly that the supreme court could understand them as well as the trial court and the parties themselves understood them.

"The supreme court will not reverse the order of the trial court granting a new trial unless the supreme court can see, beyond all reasonable doubt, that the trial court has manifestly and materially erred with respect to some pure, simple, and unmixed question of law, and that except for such error the ruling of the trial court would not have been made as it was made, and that it ought not to have been so made." (Syllabus.)

This rule has been followed in this court until it may be regarded as the settled law. (*Murphy v. Hindman,* 37 Kan. 267; *Sanders v. Wakefield,* 41 Kan. 11; *K. C. W. & N. W. Rld. Co. v. Ryan,* 49 Kan. 1; *Investment Co. v. Hillyer,* 50 Kan. 446; *Ireton v. Ireton,* 62 Kan. 358; *Glover v. Ratcliff,* 69 Kan. 428; *McCauley v. Railway Co.,* 70 Kan. 895; *Scott v. Stone,* 72 Kan. 545; *Railway Co. v. Fields,* 73 Kan. 375.) The jury made no special findings of fact, and, the court having given no reasons for its decision, we are unable to say what specific grounds of the motion were sustained, nor has it been clearly made to appear that none of the grounds was sufficient to justify the court in its ruling.

The judgment is affirmed.