No. 19,205. .

R. R. INGALLS, *Appellee* and *Appellant*, v. J. W. SMITH, *Appellant* and *Appellee*.

SYLLABUS BY THE COURT.

1. NEW TRIAL—*Duty of Trial Court to Weigh Evidence.* The principles applicable to the review of an order granting a new trial where the particular ground of the order does not appear in the record, as declared in *Ireton v. Ireton*, 62 Kan. 358, syl. ¶¶ 1, 2, 63 Pac. 429, followed in numerous other decisions, are followed in this case.

2. REAL-ESTATE BROKER—*Purchaser Produced—Contract Made —Commission Earned.* ` The rule stating the right of a real-estate broker to commissions where an enforceable contract has been entered into between his principal and a purchaser

produced by the broker, as declared in *Hutton v. Stewart,* 90 Kan. 602, 135 Pac. 681, is followed.

3. SAME—*Whether Commissions Were Relinquished—Question for Jury.* The court can not declare as a matter of law that a broker is entitled to a commission when he has produced a purchaser with whom his principal has entered into an enforceable contract, if afterward, pending a dispute between the parties over the details, the broker by his language or conduct gives his principal good reason to believe that he intends to relinquish his claim, and the principal, relying upon such belief, foregoes his right to enforce the contract.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed January 9, 1915. Affirmed.

*S. A. Smith, W. P. Hackney,* and *J. T. Lafferty,* all of Winfield, for J. W. Smith.

*Ed J. Fleming,* of Arkansas City, for R. R. Ingalls.

The opinion of the court was delivered by

BENSON, J.: This is another of the frequently recurring actions to recover commissions upon a real-estate deal. A verdict was returned for the defendant, which was set aside. A new trial was ordered, and both parties appeal.

The ground upon which the verdict was set aside is not stated.

It was said in *K. C. W. & N. W. Rld. Co. v. Ryan,* 49 Kan. 1, 30 Pac. 108:

"It has been the unvarying decision of the court to permit no verdict to stand unless both the jury and the court trying the cause could, within the rules prescribed, approve the same." (p. 12.)

The rules in such cases were stated in *Ireton v. Ireton,* 62 Kan. 358, 63 Pac. 429:

"Upon an application for a new trial because the evidence does not sustain the verdict, it is the duty of the trial court, though not of an appellate court, to weigh the evidence, although conflicting, and if the verdict

is clearly against the weight of the evidence and does not meet the approval of the court, it should be set aside.

"Where a new trial is granted upon a motion alleging several grounds, and the trial court does not state upon what particular ground the motion was sustained, the supreme court will sustain the order, if it can be sustained upon any one or more of the grounds assigned in the motion." (Syl. ¶¶ 1, 2.)

Among the more recent cases where these principles are stated are *Rowell v. Gas. Co.*, 81 Kan. 392, 105 Pac. 691; *Thompson v. Seek*, 84 Kan. 674, 115 Pac. 397; and *White v. Railway Co.*, 91 Kan. 526, 138 Pac. 589.

A written agreement was entered into between the defendant, the owner of the land, and W. E. Lambert as purchaser, for the exchange of the land for notes, and mortgages securing them, upon Oklahoma land, and the purchaser's note for the balance. After an abstract had been submitted and some objections to it had been made, among others, that it showed a mortgage besides the one referred to in the agreement, the parties to the contract disagreed over the details of performance, and the exchange was not made. The purchaser declared that the owner was trying to pass a crooked title upon him, and to compel him to become personally obligated upon the Oklahoma mortgages, and to obtain his wife's signature upon a note for the balance, which he had not agreed to do. On the other hand, the owner charged the purchaser with a purpose to repudiate the trade.

It was admitted that the agency agreement was to find a person ready, able and willing to purchase the land for a commission of $500. The agent contended that he had found such a purchaser, with whom an enforceable contract had been made, and that the failure of the deal was caused through the defendant's own breach of the contract, while the defendant contended that the purchaser was not ready and willing to comply with the contract of purchase. This was the issue submitted to the jury upon conflicting evidence.

The cross-appeal is based upon the refusal of an instruction to find for the plaintiff for the amount of commissions agreed upon.

It was held in *Hutton v. Stewart,* 90 Kan. 602, 135 Pac. 681, that:

"Ordinarily a real-estate broker has earned his commission when he has produced a customer with whom his principal enters into an enforceable contract for the sale of the land, although the title does not actually pass. After the principal has entered into such a contract, not being induced thereto by any deceit on the part of the broker, he can not avoid liability for a commission by showing the inability of the buyer to carry out his agreement." (Syl. ¶ 1.)

That decision was followed in *Avery v. Howell,* 91 Kan. 297, 137 Pac. 785.

If the contract in this case was enforceable, and within the principle so decided, the question whether it was abandoned because of the default of the vendor or of the vendee is of no practical consequence in this action for commissions. The defendant argues that the rule just stated has no application to an option contract and that the contract here was an optional one. The material provisions of the contract were that Smith should deed to Lambert a farm of 480 acres as described, for a consideration of $13,200, to be paid by assuming one-half of a mortgage of $11,000, the balance of $7700 to be paid as follows:

"One note $2640, secured by mortgage on (describing land in Oklahoma), party of the first part is to have the option of taking one mortgage of $3500 on (describing land in Oklahoma), this being a second mortgage, or a mortgage note of $4500 being a first mortgage on (describing land in Oklahoma) if party of the 1st part takes the $4500 note the remaining $560, to be paid in cash not later than Oct. 1st, if party of the 1st part takes the $3500 note then party of the 2nd part is to pay $560.00 Oct. 1st, and give a note to party of the 1st part a note due in one year for $1,000 and to draw 7 per cent interest from date of same, party of the 2nd

part is to pay his part of the interest of $11,000 from day he receives deed. Party of the 1st part is to have good and sufficient time to make examination of mortgages thats being offered as in payment on the above land if party of the 1st part excepts (accepts) mortgages as above described then he is to make party of the 2nd part a warrantee deed and to give full possession not later than Nov. 14th, 1911."

It will be noticed that there are two options referred to in the contract, an option or right of selection of securities, and an option to take such securities after a reasonable time to examine them, but both are options given to the vendor. The engagement of the vendee became absolute when the vendor exercised his options. The evidence shows that the defendant selected the $3500 Oklahoma mortgage under the contract, and that he made and tendered a deed of conveyance in execution of the contract, so the options had been exercised and were out of the case before this suit was commenced. It is difficult to see how he can successfully claim that the contract was not enforceable. When he indicated his acceptance of the Oklahoma mortgages and made his selection from them, the contract was as binding upon him as though the writing had provided absolutely that he should take them.

If the only question on this branch of the case had been whether the commissions were earned when the contract was made and the option was exercised by the defendant, an affirmative answer would be required, and in that event the plaintiff would have been entitled to the requested instruction. On examining the evidence, however, it appears that while the defendant and Mr. Lambert, the purchaser, were engaged in a controversy over the details of the contract, the defendant appealed to his agent, the plaintiff, who thereupon had a talk with Lambert, and then reported to the defendant: "I can't do anything with (using a reproachful term), we will have to let him go." The defendant testified that this was the last he heard from his agent until this suit was brought. If the agent in-

tended by this statement to relinquish his claim for commission, or if he gave the defendant good reason to believe that he intended to do so, and the defendant relied upon that belief in foregoing his rights under the contract, it should be held that the plaintiff had waived his claims for commission. The proper inference to be drawn from his conduct and language was for the jury and not the court.

The judgment is affirmed.